UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GUSTAVIA HOME LLC,

                 Plaintiff,

           -against-

ENVIRONMENTAL CONTROL BOARD,              **REPORT AND**
HSBC BANK USA NATIONAL                        **RECOMMENDATION**
ASSOCIATION AS TRUSTEE FOR                 18 CV 6485 (MKB) (CLP)
DEUTSCHE ALT-A SECURITIES
MORTGAGE LOAN TRUST, SERIES 2007-
OA5, CITY OF NEW YORK PARKING
VIOLATIONS BUREAU,

                 Defendants.
------------------------------------------------------------X
**POLLAK**, United States Magistrate Judge:

        On November 14, 2018, plaintiff Gustavia Home LLC ("Gustavia" or "plaintiff") commenced this action, pursuant to the New York Real Property and Proceedings Law ("RPAPL") § 1501, et seq., against defendants Environmental Control Board ("ECB"), HSBC Bank USA National Association as Trustee for Deutsche Alt-A Securities Mortgage Loan Trust Series 2007-OA5 ("HSBC"), and the City of New York Parking Violations Bureau ("Parking Bureau"), seeking to cancel and discharge a mortgage encumbering the property located at 446 Lafayette Avenue, Brooklyn, New York 11238 (the "Subject Premises").

        When defendants failed to file an answer or otherwise appear in this action, certificates of default were entered against them on January 7, 2019. On January 7, 2019, plaintiff filed a motion for default judgment. The motion was thereafter referred to the undersigned to conduct an inquest on damages and issue a Report and Recommendation.

        For the reasons set forth below, the Court respectfully recommends that plaintiff's

motion be denied.[1]

## FACTUAL BACKGROUND

The Complaint alleges that on June 15, 2007, Debra A. Derby and Ricardo Vaz executed a mortgage, securing the repayment of a note in the amount of $560,000 against the premises located at 446 Lafayette Avenue, Brooklyn, New York (the "Disputed Mortgage"). (Compl.[2] ¶ 10, Ex. A).  The Disputed Mortgage was initially recorded on July 6, 2007. (Id. ¶ 11).

Plaintiff alleges that defendant HSBC was assigned the Disputed Mortgage by way of an assignment of the mortgage on February 26, 2009. (Id.) HSBC thereafter commenced a foreclosure action on the Disputed Mortgage in the Supreme Court of the State of New York, Kings County in 2009. (Id. ¶ 2). Plaintiff claims that "[o]nce a mortgage that is payable in installments is accelerated, the six-year statute of limitations begins to run on the entire mortgage debt. A foreclosure action is a point of acceleration of the note and mortgage." (Id. ¶¶ 18-19). Thus, plaintiff alleges that in this case, HSBC's commencement of a foreclosure action in 2009 accelerated the entire debt, and therefore the statute of limitations on an action to foreclose the Disputed Mortgage expired on February 25, 2015, six years after the filing of the 2009 foreclosure action. (See id.). Plaintiff alleges that since the statute of limitations to

---

[1] The Court notes that plaintiff has failed to submit any Memorandum of Law or case authority of any kind in support of its motion for default judgment. Under the Local Rules of this district, this alone would be grounds to deny its motion. See Local Rule 7.1(a) (providing that "all motions shall include the following motion papers: . . . [a] memorandum of law, setting forth cases and other authorities relied upon in support of the motion . . . ."). The Court, however, has considered the motion on its merits despite its procedural deficiencies and recommends denial on the merits.

[2] Citations to "Compl." refer to plaintiff's Complaint, dated November 14, 2018, ECF No. 1.

2

foreclose on the Disputed Mortgage has expired, plaintiff brings this action pursuant to Section 1501(4) of the RPAPL to discharge the Disputed Mortgage. (Id. ¶¶ 2, 17-20).

## PROCEDURAL BACKGROUND

On November 14, 2018, plaintiff commenced this action seeking to cancel and discharge the Disputed Mortgage. (See generally id.). All of the named defendants were served with the Summons and Complaint. (See Decl.[3] ¶ 3; see also Ex. B to Decl.; 6/21/19 Sum.[4]). On January 7, 2019, the Clerk of the Court entered certificates of default against all defendants. (Id. ¶ 4; see also Ex. C to Decl.). Thereafter, plaintiff filed a motion for default judgment seeking to cancel the Disputed Mortgage, along with any further relief the Court determined was necessary and proper. (See generally Pl.'s Mot.).[5]

On July 15, 2019, upon review of plaintiff's pleadings and the instant motion, this Court noted that "plaintiff has failed to plead facts sufficient to establish its entitlement to a default judgment. Specifically, plaintiff has failed to allege facts sufficient to establish the parties'

---

[3] Citations to "Decl." refer to the Declaration of Danielle P. Light, dated January 7, 2019, ECF No. 12.

[4] Plaintiff properly filed proof of service for defendant HSBC on November 26, 2018. (See Plaintiff's Executed Summons, filed November 26, 2018, ECF No. 8). Exhibit B to the Declaration of Danielle P. Light actually contains two affidavits of service for defendant Parking Bureau and no affidavit of service for defendant ECB. Following an Order from this Court, plaintiff subsequently filed an affidavit of service for defendant ECB on June 21, 2019, showing that ECB was properly served on November 21, 2018. (See Plaintiff's Executed Summons, filed June 21, 2019, ECF No. 13 ("6/21/19 Sum.")).

[5] Citations to "Pl.'s Mot." refer to plaintiff's Motion for Default Judgment, filed January 7, 2019, ECF No. 12.

3

current interest in the real property subject to the encumbrance." (OSC[6] at 4). The Court therefore issued an Order to Show Cause directing plaintiff to show cause in writing why this Court should not recommend plaintiff's Complaint be dismissed for failure to state a plausible claim. Specifically, the Court directed plaintiff "to explain why the Complaint adequately sets forth plausible facts showing the following: 1) plaintiff's current interest in the Disputed Mortgage as "mortgagee" (Compl. ¶ 3);[7] 2) defendant ECB's current or potential interest in the Disputed Mortgage; 3) defendant Parking Bureau's current or potential interest in the Disputed Mortgage; 4) defendant HSBC's current interest in the Disputed Mortgage as "assignee" (Compl. ¶ 6); 5) the current interest of the original executors of the Disputed Mortgage, Debra A. Derby and Ricardo Vaz, and/or their possession of the Disputed Mortgage; 6) the ultimate outcome or resolution of the foreclosure action initiated by HSBC on August 23, 2011; and 7) the current outstanding sum of the Disputed Mortgage, as this sum pertains to any damages determinations that may be imposed on defendants." (Id.)

On July 29, 2019, plaintiff filed a response to the Order to Show Cause. (See 7/29/19 Ltr). In its response, plaintiff asks the Court to "take judicial notice" of additional facts stated in its response, as well as the multiple additional exhibits now attached to the response. (Id. at 2). Among the additional facts and documents which plaintiff Gustavia now asks the Court to consider are the mortgage allegedly held by Gustavia and the assignments of this mortgage as

---

[6] Citations to "OSC" refer to the Order to Show Cause issued by this Court on July 15, 2019, ECF No. 14.

[7] At the time the Order to Show Cause was issued, it was unclear from the pleadings that plaintiff was alleging the existence of two distinct mortgages and that plaintiff was not a mortgagee with respect to the Disputed Mortgage.

recorded with the Register's Office for the City of New York, County of Kings. (Id.) None of these documents were previously filed with the Complaint or provided to the Court, nor were the facts regarding this mortgage and its various transfers alleged in the Complaint.[8]

The Court notes that plaintiff *did* attach to the Complaint the Disputed Mortgage of which defendant HSBC is the mortgagee, and the assignments of the Disputed Mortgage, perhaps in recognition that these documents were essential. Plaintiff has failed to explain why it did not file any of the documentation supporting its own mortgage until eight months after the filing of its Complaint, and only in response to the Order to Show Cause issued by this Court. Plaintiff does not dispute that none of these additional facts or exhibits were previously included with its Complaint or in any form previously provided to the Court. (See, e.g., id. at 3). As set forth below, the plaintiff's status as a mortgagee of a competing mortgage, as well as the status of Derby and Vaz, are essential to establishing plaintiff's interest in the Subject Premises and standing to bring this quiet title action.

---

[8] There is also no indication in plaintiff's response to the Order to Show Cause that its response, including these additional documents, was served on defendants.

DISCUSSION

1. Legal Standard

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for entry of a default judgment. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by recording a notation of the party's default on the docket maintained by the Clerk. See id.; Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default"). Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment. See Fed. R. Civ. P. 55(b).

Where the amount of damages owed requires a judicial finding, a default judgment may be entered once the court has conducted a hearing or made a determination as to damages. See id. That said, while "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988), aff'd, 873 F.2d 38 (2d Cir. 1989); see also Transportes Aereos de Angola v. Jet Traders Inv. Corp., 624 F. Supp. 264, 266 (D. Del. 1985).

The Second Circuit has cautioned that default judgment is an extreme remedy, and therefore should be entered only as a last resort. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). Although the Second Circuit has recognized the "push on a trial court to dispose of

cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that district courts must balance that interest with the responsibility to "[afford] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and all doubts should be resolved in favor of the defaulting party. Id. Thus, a plaintiff is not entitled to a default judgment and any concomitant damages as a matter of right simply by virtue of a defendant's procedural default. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including: (1) whether the grounds for default are clearly established; (2) whether the claims were pleaded adequately in the complaint, thereby placing defendants on notice of the relief sought, see Fed. R. Civ. P. 54(c) (providing that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96; cf. King v. STL Consulting, LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated when a court awards damages that accrued during the pendency of a litigation, so long as the complaint provided notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved—the more money involved, the less justification for entering default judgment. Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992). Additionally, "the Court may consider whether material issues

7

of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff[s] ha[ve] been substantially prejudiced by the delay involved, and whether the default judgment may have a harsh effect on the defendant[s]." Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd., 888 F. Supp. 2d 385, 393 (S.D.N.Y. 2012) (internal citations omitted).

The plaintiff bears the burden of establishing its entitlement to recovery. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993). Upon entry of default, defendants are deemed to have admitted all well-pleaded factual allegations in the complaint pertaining to liability, but not legal conclusions or allegations relating to damages. Id.; see also Advanced Capital Commercial Grp., Inc. v. Suarez, No. 09 CV 5558, 2013 WL 5329254, at *3 (E.D.N.Y. Sept. 20, 2013).

It remains the plaintiff's burden to demonstrate that the uncontroverted facts establish each defendant's liability as a matter of law on each cause of action asserted. Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009). In determining whether the plaintiff has met that burden, the Court draws all "reasonable inferences from the evidence offered" in plaintiff's favor. Id. (quoting Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). However, the court "retains discretion under [Federal Rule of Civil Procedure] 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action . . . ." Id. at 84 (quoting Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65); see also Atlantic Recording Corp. v. Brennan, 534 F. Supp. 2d 278, 283 (D. Conn. 2008) (denying a motion for default judgment and noting that in deciding a motion for default judgment, the court must consider whether plaintiffs' complaint adequately stated a claim upon

which relief can be granted).

2. <u>Default Determination</u>

In this case, it is beyond dispute that defendants are in default since they failed to file an Answer to the Complaint, failed to oppose plaintiff's motion for a default judgment, and failed to challenge the Court's entry of a default. See <u>Hirsch v. Innovation Int'l, Inc.</u>, 1992 WL 316143, at *2 (observing that "[the defendant's] default is crystal clear—it does not even oppose this motion"). While a defaulting defendant admits all well-pleaded factual allegations apart from those relating to damages, it remains incumbent on the Court to review the allegations in the complaint to determine if plaintiff has met its burden to ensure the elements of each claim have been pleaded adequately. See <u>Au Bon Pain Corp. v. Artect, Inc.</u>, 653 F.2d at 65.

a) <u>New York RPAPL Section 1501(4)</u>

Plaintiff seeks to quiet title to the Subject Premises and discharge and cancel the Disputed Mortgage. In New York, "[t]he function of the equitable action to quiet title is now largely replaced by the procedures under Real Property and Proceedings Law Article 15." <u>Barberan v. Nationpoint</u>, 706 F. Supp. 2d 408, 416–17 (S.D.N.Y. 2010) (citing 2–24 Warren's Weed New York Real Property § 24.01; <u>W. 14th St. Commercial Corp. v. 5 W. 14th Owners Corp.</u>, 815 F.2d 188, 196 (2d Cir.1987) (noting that "New York has codified the common law action to quiet title and statutorily redefined the necessary elements for a well-pleaded remaining cloud on title complaint").

New York Real Property and Proceedings Law ("RPAPL") Section 1501(4), provides:

> Where the period allowed by the applicable statute of limitations for the commencement of an action to foreclose a mortgage, or to enforce a

9

vendor's lien, has expired, any person having an estate or interest in the real property subject to such encumbrance may maintain an action against any other person or persons, known or unknown, including one under disability as hereinafter specified, to secure the cancellation and discharge of record of such encumbrance, and to adjudge the estate or interest of the plaintiff in such real property to be free therefrom; *provided*, however, that no such action shall be maintainable in any case where the *mortgagee*, holder of the vendor's lien, or the successor of either of them shall be in possession of the affected real property at the time of the commencement of the action.

(emphasis added).

A person "'with an estate or interest in real property subject to an encumbrance may maintain an action to secure the cancellation and discharge of the encumbrance, and to adjudge the estate or interest free of it, if the applicable statute of limitations for commencing a foreclosure action has expired.'" J & JT Holding Corp. v. Deutsche Bank National Trust Co., 173 A.D.3d 704, 706 (2d Dep't 2019) (citing Milone v. U.S. Bank N.A., 164 A.D. 3d 145, 151, 83 N.Y.S. 3d 524 (2d Dep't 2018)).

It is well established that in order to bring a successful claim under RPAPL § 1501(4), the plaintiff "must set forth facts showing: (i) the nature of the plaintiff's interest in the real property and the source of this interest; (ii) that the defendant claims an interest in the property adverse to that of the plaintiff, and the particular nature of the interest; (iii) whether any defendant is known or unknown, or incompetent; and (iv) whether all interested parties are named." Costa v. Deutsche Bank Nat'l Tr. Co. for GSR Mortg. Loan Tr. 2006-OA1, 247 F. Supp. 3d 329, 338 (S.D.N.Y. 2017), appeal withdrawn sub nom. No. 17-928, 2017 WL 4574795 (2d Cir. July 12, 2017) (citing Knox v. Countrywide Bank, 4 F. Supp. 3d 499, 513 (E.D.N.Y. 2014)); see also N.Y. RPAPL § 1515(1)(a) (requiring that a complaint brought under Article 15 must set

forth facts showing [] the plaintiff's estate or interest in the real property, the particular nature of such estate or interest, and the source from or means by which the plaintiff's estate or interest immediately accrued to him . . . "); Zucker v. HSBC Bank, USA, No. 17 CV 2192, 2018 WL 2048880, at *5 (E.D.N.Y. May 2, 2018); Guccione v. Estate of Guccione, 84 A.D. 3d 867, 923 N.Y.S.2d 591, 593 (2d Dep't 2011) (noting that to "maintain a cognizable cause of action under RPAPL article 15, a plaintiff *must describe in his or her complaint* the nature of the plaintiff's interest in the real property and the source of this interest") (emphasis added).

In addition, in an action brought to quiet title, "the nonparty purchaser of the subject property [has] an interest in the property as contemplated by RPAPL § 1501(4) and, in this regard, *is a necessary party to this action*, since his or her interest in the property would be affected by any judgment rendered herein." Guccione v. Estate of Guccione, 84 A.D.3d at 870, 923 N.Y.S.2d at 593 (emphasis added); see also RPAPL § 1511(1) (stating that "[i]n an action brought under [Article 15], the person in possession shall be made a party to the action . . . .").

Thus, to discharge a mortgage pursuant to RPAPL Section 1501(4), plaintiff must show: 1) that it has an estate or interest in the real property; 2) that all necessary parties to the action were joined; and 3) that the applicable statute of limitations for commencing a foreclosure action has expired without the commencement of a foreclosure action. See Gustavia Home LLC v. VVSI Corp., No. 17 CV 4330, 2019 WL 2527291, at *3-4 (E.D.N.Y. Jun. 19, 2019) (noting that "a party only needs to commence a foreclosure action within the statutory period; it does not need to obtain a judgment before the statute of limitations expires").

b) <u>Analysis</u>

Based on the allegations in the Complaint and a review of the documentation attached thereto, the Court finds that plaintiff has failed to adequately plead the facts necessary to entitle it to judgment as a matter of law. Apart from certain internal inconsistencies in the pleadings (<u>see</u> discussion <u>infra</u> at 17), the Complaint contains very little in the way of information about the plaintiff Gustavia or the other named defendants. As for defendants ECB and the Parking Bureau, plaintiff's only allegation is that these entities may claim an interest in the Subject Premises through liens or judgments recorded against the Subject Premises, but the Complaint provides no further information in this regard. (<u>Id.</u> ¶ 7). More importantly, the Complaint fails to provide sufficient factual allegations to explain plaintiff's interest in seeking to discharge the Disputed Mortgage in this case.

i) <u>Plaintiff's Interest in the Property</u>

As an initial matter, plaintiff has failed to allege sufficient facts to satisfy the first element of a claim under RPAPL Section 1501(4) – namely, that it has an interest in the real property that is subject to Disputed Mortgage. There are only two allegations relating to Gustavia; the first appears in the section of the Complaint describing the parties, where it is simply alleged that plaintiff is a single member limited liability company, organized under the laws of the State of Delaware, with offices in Florida. (Compl. ¶ 3). The only other allegation relating to plaintiff is that "Plaintiff is the mortgagee of the Subject Premises by a Mortgage dated June 15, 2007 in the amount of $200,000" (the "Gustavia Mortgage"). (<u>Id.</u> ¶ 4).[9] Nowhere

---

[9] From this information in the Complaint, the Court infers that there are two mortgages on the Subject Premises.

in the Complaint does plaintiff explain how it obtained this interest, nor does it make clear that this is a separate mortgage from the one described in the Complaint as the "Disputed Mortgage." (See id.). Other than alleging generally that plaintiff is a mortgagee on a $200,000 mortgage secured by the Subject Premises, there are no allegations in the Complaint explaining when or how the plaintiff acquired an interest in this other Gustavia Mortgage. As noted, supra, plaintiff now asks the Court to take judicial notice of certain additional documents and exhibits filed in response to the Order to Show Cause, that purport to show the various assignments of the Gustavia Mortgage, leading ultimately to Gustavia as the mortgagee. Although plaintiff attached to its Complaint certain documentation showing the various assignments of the Disputed Mortgage, it failed to include or reference any of the exhibits pertaining to its own mortgage that it now asks the Court to take judicial notice of.

"At any stage of a proceeding, a 'court may judicially notice a fact that is not subject to reasonable dispute because'" it is either generally known within the territorial jurisdiction of the trial court or because it "'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" Schwartz v. United States Drug Enforcement Administration, 692 Fed. App'x. 73, 74 n.2 (2d Cir. 2017) (citing Fed. R. Evid. 201); see also Richardson v. New York City Board of Education, 711 Fed. App'x 11, 12 (2d Cir. 2017) (taking judicial notice of three public documents promulgated by or binding on government agencies). While courts may consider "documents possessed by or known to the plaintiff and upon which it relied in bringing [its] suit, the Court is not required to do so." Booker v. Griffin, No. 16 CV 72, 2019 WL 3423262, at *3 (S.D.N.Y. Jul. 30, 2019). "'Caution must be used in determining that a

13

fact is beyond controversy under Rule 201(b)'" and thus appropriate for the taking of judicial notice. Costello v. Flatman, LLC, 558 Fed. App'x 59, 60 (2d Cir. 2014) (citing International Star Class Yacht Racing Association v. Tommy Hilfiger U.S.A. Inc., 146 F.3d 66, 70 (2d Cir. 1998)).

Moreover, while the Court may take judicial notice of what a document states, it may not do so to prove the truth of its contents. See B & R Supermarket, Inc. v. MasterCard International Inc., 2018 WL 4445150 (E.D.N.Y. Sep. 18, 2018) (citing Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007)) (noting that "[i]f the court takes judicial notice of a document, it does so for its existence, 'but not for the truth of the matters asserted'"); see also Liberty Mutual Insurance Co. v. Rotches Pork Packers, Inc., 969 F.2d 1384, 1388-89 (2d Cir. 1992).

Here, plaintiff "requests that the Court take judicial notice of the Gustavia Mortgage and the assignments of the Gustavia Mortgage that are all recorded in the land records with the Register's Office for the City of New York, County of Kings." (7/29/19 Ltr at 2). Moreover, it appears that plaintiff is asking the Court to take judicial notice not only of the existence of these documents, but also to accept the facts stated within the documents as true – namely, that Gustavia has an interest in the real property at issue in this case. Plaintiff, however, has not even attempted to set forth its explanation for why it believes the Court should take judicial notice of these documents and the additional facts set forth therein and included in plaintiff's July 29, 2019 letter.

In an exercise of discretion, the Court declines to take judicial notice of these documents and the facts purported to show the assignment of the Gustavia Mortgage to Gustavia. Plaintiff

14

has provided no explanation for why the Court should do so, and these documents were not referenced or incorporated into the Complaint. Even if the Court were to take judicial notice of these belatedly filed documents, it could not consider the truth of the matters asserted within them.

Accordingly, based on a review of the allegations set forth in the Complaint, the Court finds that plaintiff has not sufficiently alleged its interest in the Subject Property as required by the RPAPL.

ii) Other Interested Parties

Moreover, although the Complaint also does not clearly explain this, the Court infers from the different dollar amounts attributed to the mortgages that two mortgages were issued on June 15, 2007: the Disputed Mortgage, in the amount of $560,000, and a second mortgage in the amount of $200,000. Nowhere in the Complaint does plaintiff provide any information as to the mortgagors for the Gustavia mortgage in which plaintiff claims to hold an interest as mortgagee, nor does plaintiff allege which of the two mortgages is the subordinate mortgage.

In pleading the second element necessary to bring a claim under RPAPL Section 1501(4), plaintiff must show that all necessary parties to the action have been joined. In response to this Court's Order to Show Cause, plaintiff now represents that Derby and Vaz[10] are the title owners

---

[10] The sole allegation pertaining to Derby and Vaz in the Complaint is that they executed the Disputed Mortgage. (Compl. ¶ 10). In plaintiff's response to the Order to Show Cause, plaintiff states for the first time that Derby and Vaz are the title owners of the Subject Premises and the mortgagors of the Disputed Mortgage and of the Gustavia Mortgage. (Plaintiff's July 29, 2019 Letter, ECF No. 15 ("7/29/19 Ltr") at 3). Neither Derby nor Vaz were named as defendants in this action.

15

of the Subject Premises as well as the mortgagors of both the Disputed Mortgage and of the Gustavia Mortgage. (7/29/19 Ltr at 3). This information is not alleged in the Complaint and neither Derby or Vaz are named as defendants in this action. Plaintiff has failed to explain why Derby and Vaz, as mortgagors of the property encumbered by both the Disputed Mortgage and the mortgage through which plaintiff obtained its interest in the property, have not been joined in this lawsuit.[11] The Court finds that, based on the information before the Court, Derby and Vaz are necessary parties to this case and the failure to include them prevents the Court from considering plaintiff's motion for default judgment.

iii) Statute of Limitations

Finally, as to the third element that must be alleged – namely, that the applicable statute of limitations for commencing a foreclosure action has expired without the commencement of a foreclosure action – the Complaint correctly notes that the statute of limitations to commence a foreclosure action in New York is six years. CPLR § 213(4). When a mortgage is payable in installments, the statute of limitations begins to run from the date of the acceleration of the mortgage. Loiacono v. Goldberg, 240 A.D.2d 476, 477, 658 N.Y.S.2d 138, 139 (2d Dep't 1997); Milone v. U.S. Bank N.A., 164 A.D. 3d at 151, 83 N.Y.S. 3d at 524. To accelerate a mortgage debt, there must be some affirmative action taken by the holder of the mortgage evidencing a clear intention to accelerate the debt. Wells Fargo Bank, N.A. v. Burke, 94 A.D.3d

---

[11] Gustavia has filed other cases in this district seeking the same relief, pursuant to RPAPL § 1501(4), to quiet title to other properties. In Gustavia Home, LLC v. VVSI Corp., plaintiff named the current title holder of the property at issue as a defendant. No. 17 CV 4330 (E.D.N.Y. 2017) (naming "the current title holder of the Property" as a defendant in paragraph 12 of the complaint). It is unclear why the current title holders were not named in the instant litigation.

980, 982, 943 N.Y.S.2d 540, 542 (2d Dep't 2012). Commencing a foreclosure action has been deemed clear notice that the mortgagee is accelerating the mortgage debt. Id.

If, as alleged in the Complaint, defendant HSBC commenced an action to foreclose the Disputed Mortgage in February 2009, that foreclosure action would have accelerated the mortgage debt on that date and started the running of the statute of limitations. (Comp. ¶ 12, Ex. C). Based on plaintiff's allegation that no new foreclosure actions were ever filed to foreclose the Disputed Mortgage (Compl. ¶ 15), the statute of limitations to commence a foreclosure action would have expired on February 26, 2015.

While plaintiff has sufficiently alleged facts that suggest that the six-year statute of limitation has now run on the Disputed Mortgage, a review of the allegations in the Complaint reveals a number of internal inconsistencies about the status of the Disputed Mortgage and the prior foreclosure actions. In paragraph 6 of the Complaint, plaintiff alleges that HSBC was assigned the Disputed Mortgage on December 13, 2013, which assignment was recorded on December 5, 2014. (Id. ¶ 6; see also Ex. B) (containing copies of entire chain of assignments of the Disputed Mortgage). The documentation plaintiff has provided also indicates that the assignment of the Disputed Mortgage to HSBC is dated December 16, 2013. (Id., Ex. D at 7).

However, in paragraph 11 of the Complaint, plaintiff alleges that HSBC was assigned the Disputed Mortgage by assignment of mortgage on February 26, 2009, and that the assignment was recorded on March 16, 2009. (Id.) Plaintiff does not explain the discrepancies between paragraphs 6 and 11 of the Complaint or of other discrepancies that also appear in the

17

Complaint.[12] Nor does plaintiff explain how, if the assignment of the mortgage did not occur until 2013, as the documentation suggests, HSBC had a sufficient interest in the Disputed Mortgage to commence a foreclosure action in 2009.[13]

Another crucial inconsistency in the Complaint is the status of the HSBC foreclosure actions. Plaintiff first alleges that on February 26, 2009, HSBC commenced a foreclosure action on the Disputed Mortgage in the Supreme Court of the State of New York, Kings County. (Id. ¶ 2). Plaintiff alleges that "HSBC discontinued this case voluntarily in March 2009 and a new foreclosure action has not been commenced since that time and was not commenced by February 26, 2015." (Id.) Within the same pleading, however, plaintiff alleges that the 2009 foreclosure action was actually terminated through a stipulation of discontinuance and cancellation of lis pendens in that action on March 9, 2011, not March 2009. (Id. ¶ 13; see also Ex. C).

Plaintiff also contradicts its earlier claim in paragraph 2 of the Complaint that no further foreclosure actions had taken place. (Id. ¶ 2). By contrast, in paragraph 14, plaintiff claims that, in fact, on August 23, 2011, HSBC filed a second foreclosure action in the Supreme Court of the State of Kings County, which was discontinued on May 3, 2012. (Id. ¶ 14; Ex. D). Plaintiff never explains these discrepancies contained within its Complaint.

The discrepancies in the Complaint as to the date HSBC was assigned the mortgage raise questions about whether the alleged foreclosure action filed in 2009 accelerated the loan and

---

[12] For example, page 11 of Exhibit D contains a "Recording and Assignment Cover Page" between two non-parties to this action of a mortgage on a different property located at 300 Berriman Street, Brooklyn. (See Compl., Ex. D). The plaintiff never explains what this document is or why this property is in any way relevant to this action.

[13] It appears as though the mortgage and note were assigned to HSBC on two different occasions, although nowhere is that explained in the Complaint.

commenced the running of the statute. If, as the documents suggest, HSBC did not acquire the assignment until 2013, it is unclear how HSBC could have commenced a foreclosure action in 2009.

Having reviewed the bare bones allegations in the Complaint, the Court finds that plaintiff has failed to adequately plead all of the elements of its claim. While plaintiff asks the Court to consider the additional information provided, the Court declines to take judicial notice of these additional materials, and will not rescue plaintiff from its poorly pleaded complaint. As discussed, supra, RPAPL Section 1515 makes clear what plaintiff must plead in its Complaint to state a viable cause of action. Plaintiff did not include information sufficient to state its interest in the Subject Premises at issue in the Complaint, provided no explanation as to why the mortgagors were not included in the action, and filed a Complaint containing a variety of allegations that on their face appear to be inconsistent. When asked by the Court to clarify these issues, plaintiff did not attempt to file an Amended Complaint; it only sought to file a letter containing some additional information *after* the Court *sua sponte* reviewed the deficiencies in plaintiff's Complaint and issued an Order to Show Cause why the Complaint should not be dismissed.

## CONCLUSION

In summary, the Court respectfully recommends that plaintiff's motion for default judgment cancelling and discharging the Disputed Mortgage be denied, and that plaintiff's Complaint be dismissed for failure to state a claim. The Court further recommends that plaintiff

be allowed 30 days to file an Amended Complaint setting forth the necessary elements required to bring an action under RPAPL Section 1501(4), and that plaintiff be ordered to serve the Amended Complaint upon the defendants in accordance with the Federal Rules of Civil Procedure.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a), (e) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated:   Brooklyn, New York
         August 21, 2019

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York